## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **MILLENNIUM MULTIPLE EMPLOYER** | § | **Case No. 10-13528** |
| **WELFARE BENEFIT PLAN,** | § | **(Chapter 11)** |
| **Debtor.** | § | |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT

Millennium Multiple Employer Welfare Benefit Plan, debtor and debtor-in possession (the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee") file this Joint Motion for Approval of Settlement (the "Motion"), pursuant to sections 105, 362, 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").[1]

### Jurisdiction and Statutory Predicate

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  The Motion presents a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

2.      The predicate for the relief sought in this Motion is sections 105(a), 362, 363, and 365 of the Bankruptcy Code and Rules 4001, 6004, and 9019 of the Bankruptcy Rules.

### Factual Background

3.      On June 9, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.  Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtor is in possession of its assets and is operating as debtor-in-possession.

4.      The Debtor asserts that it is a welfare benefit plan that provides medical, disability, long-term care, severance and death benefits to its participants, who are employees of

---

[1] Unless otherwise defined in this Motion, all capitalized terms herein shall have the respective meanings set forth in the Settlement Glossary attached to the Settlement Agreement as Exhibit "A," and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

the covered employers that adopted the Millennium Plan.  The Debtor currently has over 200 covered employers and over 400 plan participants.

5.    The covered employers agreed to make contributions to the Debtor.  Those contributions were used, *inter alia*, to purchase life insurance policies (the "Policies") on the lives of plan participants (the "Participants").  Republic Bank & Trust holds legal title to the Policies.  The Debtor is the beneficial owner of each of the Policies.  The Debtor funds the payment of benefits as well as its own operations through contributions by covered employers, loans against the Policies, and the surrender or redemption of the Policies under certain circumstances.  The Debtor currently owns 453 Policies with a total accumulation value of approximately $130.2 million against which there are total outstanding loans of approximately $30.6 million.

6.    The Debtor filed this bankruptcy case, in part, to relieve the pressure and cost of significant pending litigation and to attempt to resolve all such litigation through settlement. Specifically, dozens of current, former, or alleged Participants (collectively, the "Litigation Claimants") sued the Debtor and/or asserted various claims, formally or informally, against the Debtor relating to its pre-petition operations, including claims for breach of fiduciary duty, breach of contract, fraud, and negligent misrepresentation (the "Litigation Claims").[2]  The Litigation Claims are the subject of several pending lawsuits against the Debtor, including the following:

- *Young et al. v. The Millennium Multiple Employee Benefit Plan et al.*, Cause No. 08-13325 (193rd District Court, Dallas County, Texas); and Adv. No. 10-03156-BJH (Bankr. N.D. Tex.);

- *Westfall et al. v. Bevan et al.*, Cause No. 08-13325 (193rd District Court, Dallas County, Texas); and Adv. No. 10-03158-BJH (Bankr. N.D. Tex.);

---

[2] A list of the Litigation Claimants is attached to the Settlement Glossary as Exhibit "2."

- *Passons et al. v. Aviva et al.*, Civil Action No. 10-7-I (Chancery Court for Davidson County, Tennessee); and Adv. No. 3 :10cv00575 (Bankr. M.D. Tenn.);

- *Embras et al. v. Fakouri et al.*, Cause No. 09-03731 (193rd District Court, Dallas County, Texas); and Adv. No. 10-03157-BJH (Bankr. N.D. Tex.);

- *White et al. v. Aviva et al.*, Cause No. 66646 (Chancery Court for Madison County, Tennessee); Case No. 1:10-cv-01147-JDB-egb (W.D. Tenn.); and Adv. No. 10-13528 (Bankr. W.D. Okla.); and

- *Preston et al. v. Millennium Multiple Employee Benefit Plan*, Case No. CV-09-284 (Circuit Court of Sebastian County, Arkansas, Fifth Division); Adv. No. 2:10-ap-07081 (Bankr. W.D. Ark.).

The Litigation Claimants collectively seek more than $150 million in damages through these and other lawsuits against the Debtor.

7.      In the Fall of 2009, several of the insurers, who collectively hold more than eighty percent (80%) of the Debtor's assets in the form of the cash surrender value in the Policies, filed interpleader actions in the United States District Court for the Western District of Oklahoma. Simultaneous with the filing, the insurers took the position that they would no longer allow the Debtor access to its assets held within the Policies. Accordingly, although the Debtor has a net worth in excess of $85 million, it was unable and continues to be unable to obtain access to a large portion of those funds.

8.      The Debtor asserts that it has various claims against the Litigation Claimants, including claims for contractual indemnity (the "Debtor Claims"). According to the Debtor, the contractual indemnity claims arise from a provision of the agreement signed by each employer that decided to participate in the Debtor. If the Debtor were to continue to pursue these contractual indemnity claims against the Litigation Claimants, the Debtor would seek to recover, *inter alia*, attorney's fees in defending against the Litigation Claims.

9.        After extensive arms-length negotiations, the Debtor, the Committee, and the Litigation Claimants have reached an agreement to settle the Debtor Claims and the Litigation Claims, subject to approval by the Court pursuant to Federal Rule of Bankruptcy Procedure 9019.  The Parties have memorialized this settlement by executing the Litigation Claimants Settlement Agreement (the "Settlement Agreement").[3]  The material terms of the Settlement Agreement are summarized below:[4]

a.      Surrender of Policies.  The Debtor will undertake commercially reasonable efforts to surrender the Policies insuring the lives of the Litigation Claimants who are current Participants so that it can receive cash from the insurers that issued such Policies.

b.      Settlement Repayment.  The Debtor will retain $3,000,000 of the cash proceeds received from surrendering the Policies described in paragraph 9(a) above (the "Settlement Repayment").  As explained below, this Settlement Repayment is intended to account for, *inter alia*, loans on the Policies, uncertainties and costs of continued litigation, the potential responsibility of Litigation Claimants for certain costs incurred by the Debtor and consideration for release of the Debtor Claims as part of the settlement.

c.      Tax Considerations.  The Debtor has been negotiating with the Internal Revenue Service regarding a comprehensive settlement of tax issues affecting the Participants, covered employers and others, and is close to a potential agreement.  The Settlement Agreement has several provisions intended to provide the Litigation Claimants the benefit of any such settlement and to allow the Debtor to fulfill its obligations under any IRS settlement.  The Settlement Agreement also provides that the Litigation Claimants will be responsible for any additional tax liability imposed on the Debtor or the non-litigant Participants as a result of the Settlement.

d.      Transfer of Cash Proceeds.  The Debtor, after retaining the Settlement Repayment, will transfer the remaining cash proceeds from the surrender of the Policies described above to one of the counsel for the Litigation Claimants, subject to any applicable tax

---

[3] A copy of the Settlement Agreement, with exhibits, is attached hereto as Exhibit "A."

[4] The information above is only a summary of the Settlement Agreement, and is not intended to amend or modify the actual terms of the written Settlement Agreement.  The Debtor, Committee, and Litigation Claimants believe the summary to be accurate; however, the terms of the Settlement Agreement shall control in the event of any conflict between the summary herein and the Settlement Agreement.

withholding, who will then distribute such proceeds to the Litigation Claimants.

     e.     <u>Bankruptcy Court Approval.</u>  The Settlement Agreement is contingent upon this Court's approval of the settlement under Federal Rule of Bankruptcy Procedure 9019.

     f.     <u>Mutual Releases.</u>  The Debtor and the Litigation Claimants will execute mutual releases as to the Debtor Claims and the Litigation Claims.

10.    The Committee and its counsel adopted certain protocols and procedures to ensure an arms-length and conflict-free negotiation of the Settlement Agreement. The Committee includes several Litigation Claimants or counsel for some of the Litigation Claimants. However, those members of the Committee represented only the Litigation Claimants in the negotiation of the Settlement Agreement, while the remaining Participants were represented by the Debtor and Lester Lewis, a co-chairman of the Committee and a non-litigant Participant. The Settlement Agreement was approved by a vote of the non-litigant Participants on the Committee, by the legal representatives of the Litigation Claimants and the Committee, and the Litigation Claimants themselves who will execute the Settlement Agreement.

11.    Moreover, as disclosed in prior filings,[5] the Committee's lead counsel, Diamond McCarthy LLP, represents certain Litigation Claimants — namely, Jerald White, Claudia White, and Diogenes Holdings, Inc. (collectively, the "<u>Whites</u>"). Pursuant to its engagement letter, Diamond McCarthy LLP did not advise or represent the Committee with respect to issues relating to the Whites, including provisions in the Settlement Agreement regarding: (a) the Settlement Repayment; (b) the division of third-party settlement proceeds between the Debtor and the Litigation Claimants; and (c) indemnification provisions in the Settlement Agreement.

---

[5] *See* Application for Entry of an Order Authorizing Employment of Diamond McCarthy LLP as Counsel for the Official Committee of Unsecured Creditors, *Nunc Pro Tunc* to June 25, 2010 ¶ 12 (DE #188); Verified Statement of Diamond McCarthy LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019 ¶ 2 (DE #284).

Instead, the Committee's local counsel, Conner & Winters LLP, advised and represented the Committee on such issues.

12.     The Debtor and the Committee believe that the Settlement Agreement is fair and equitable and in the best interests of the estate.  Accordingly, the Debtor and the Committee submit the Settlement Agreement to the Court for its approval.

### Arguments and Authorities

**A.    Applicable Standard for Settlement Approval**

13.     Compromise and settlement have long been an inherent component of the bankruptcy process.[6]  Settlements are governed by Federal Rule of Bankruptcy Procedure 9019, which states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."[7]  Rule 9019 does not state the standards to be applied by the Court in approving compromise or settlement.  Courts, therefore, have devised various tests over the years to determine whether a settlement is in the best interests of the estate and the creditors.

14.     For example, the United States Supreme Court established certain standards in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), stating:

> [T]he judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.[8]

---

[6] *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

[7] FED. R. BANKR. P. 9019(a).

[8] *Trailer Ferry*, 390 U.S. at 424-25.

15.     The Bankruptcy Appellate Panel for the Tenth Circuit subsequently adopted a four-part test derived from *Trailer Ferry* for evaluating a proposed settlement under Rule 9019: (a) the chance of success of the litigation on the merits; (b) possible problems in collecting the judgment; (c) the expense and complexity of the litigation; and (d) the interest of the creditors.[9] As explained below, each of the relevant factors weighs in favor of approving the Settlement Agreement here.

**B.     Chance of Success on the Merits**

16.     The Debtor believes that the Debtor Claims have merit, but the Debtor recognizes that there is no guarantee or certainty that it would be successful in prosecuting such claims. Indeed, there would be some significant risks associated with the Debtor Claims. For example, approximately eighty percent (80%) of the damages under the contractual indemnity claims relate to fees incurred by the Debtor, but the Debtor is not specifically named in the indemnity provisions of the Adoption Agreement.

17.     The Debtor, moreover, faces potential liability related to the Litigation Claims, who seek to recover more than $150 million in alleged damages (while the Debtor has net assets of less than $100 million). Although the Debtor believes the Litigation Claims have little or no merit, there is no guarantee or certainty that the Debtor would be successful in defeating such claims. And, of course, an adverse judgment against the Debtor on the Litigation Claims could greatly reduce the funds available for non-litigant Participants and other creditors.

---

[9] *Korngold v. Loyd (In re Southern Med. Arts Co., Inc.)*, 343 B.R. 250, 256 (B.A.P. 10th Cir. 2006).

## C.    Possible Problems in Collecting a Judgment

18.    Even if the Debtor were to prevail on the Debtor Claims, the Debtor could face a number of obstacles in collecting any judgment, including possible inability by the Litigation Claimants to pay any judgment.

19.    In addition, the Debtor would be forced to pursue dozens of Litigation Claimants, who are primarily individuals and small businesses scattered throughout the country, in order to collect any judgment on the Debtor Claims.  More importantly, even if it were to prevail on the Debtor Claims, the Debtor could still owe significant monetary and other obligations to the Litigation Claimants as Participants entitled to post-liquidation distributions and could still be exposed to the Litigation Claims which could greatly exceed any of the Debtor Claims.

## D.    Cost and Complexity of the Litigation

20.    There is no doubt that prosecuting and defending the Litigation Claims and the Debtor Claims would be complex and costly.  The Debtor and many of the Litigation Claimants have been embroiled in complex, multi-party litigation for more than three years in multiple courts around the country.  This litigation has involved depositions of dozens of witnesses and the production of thousands of pages of documents, and would likely involve many more depositions and further discovery if it were not settled.  The litigation involves complex legal issues, including tax issues, ERISA issues, bankruptcy issues, insurance issues, actuarial issues as well as general litigation issues, and thus continuing the litigation would require the expenditure of significant funds on experts and various attorneys with expertise in these complex areas of the law.  Indeed, the Debtor filed this bankruptcy case, in part, to relieve the pressure and cost of litigation.

E.      **Best Interests of the Creditors**

21.      The Settlement Agreement is in the best interests of the creditors.  The Settlement Agreement eliminates the costs, delays, and risks inherent in litigating the Debtor Claims and the Litigation Claims.  The Settlement Agreement provides for the Litigation Claimants to receive the adjusted cash proceeds from the surrender of the Policies insuring the lives of the Litigation Claimants who are also Participants. The Debtor's remaining assets will remain in the Debtor for the benefit of the non-litigating Participants and other creditors.  This division of assets was the result of arms-length negotiations between the litigant and non-litigant constituencies of the Committee..

22.      The Settlement Agreement provides for a Settlement Repayment — a payment of $3,000,000 to the Debtor or a post-confirmation trust — prior to making any distributions or other transfers.  This appropriately recognizes and resolves the issues described above in paragraph 9(b), including, among other things: (a) disparity in loans taken against the Policies insuring the lives of non-litigant Participants versus loans taken against Policies insuring the lives of the Litigation Claimants; (b) estimated future administrative expenses in this case; and (c) consideration for release of the Debtor Claims as part of the settlement.

23.      The Settlement Agreement also encourages additional settlements with third parties.  Under the Settlement Agreement, the Debtor, the Committee, and the Litigation Claimants may jointly seek to negotiate and pursue settlements with third parties regarding claims held by the Debtor and/or the Litigation Claimants.  If a joint settlement is reached, the settlement proceeds shall be divided as follows:  (a) eighty percent (80%) to the Litigation Claimants; and (b) twenty percent (20%) to the Debtor or a post-confirmation trust.

24.      This formula, which is the result of arms-length negotiations between the litigant and non-litigant constituencies of the Committee, represents a fair division of any settlement

proceeds.  First, many of the Litigation Claimants have invested significant time and money pursuing their claims against various third parties over the past few years.  As a result, the Litigation Claimants have a substantial knowledge base that would be useful to the Debtor and the Committee in pursuing and obtaining settlements.  Second, given their pending lawsuits, the Litigation Claimants may not be subject to the same statute-of-limitations defenses by third parties that the Debtor and non-litigant Participants may face in pursuing their claims.  Third, although the Committee largely disagrees with this assessment, the Debtor believes that its claims against many third parties have substantial obstacles regarding liability and/or damages. Fourth, based on the Debtor's and the Committee's preliminary settlement discussions with several third parties, these parties appear to be primarily concerned about the Litigation Claims. Accordingly, the proposed 80-20 formula is a fair division of settlement proceeds between the Litigation Claimants and the Debtor (*i.e.*, the non-litigant Participants).

<u>**Conclusion and Request for Relief**</u>

        For the reasons stated above, the Debtor and the Committee respectfully request that the Court enter an order:  (a) approving the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019; and (b) granting such other and further relief that is just and proper.

Dated: November 19, 2010.

Respectfully submitted,

 */s/ Peter Franklin*
Peter Franklin, TX State Bar No. 07378000
Doug Skierski, TX State Bar No. 24008046
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7101
Facsimile: (972) 755-7111
E-mail: pfranklin@fslhlaw.com
        dskierski@fslhlaw.com

*Counsel for Debtor in Possession*
*Millennium Multiple Employer Welfare Benefit Plan*

-and-

 */s/ G. Blaine Schwabe, III*
G. Blaine Schwabe, III, OBA No. 8001
Gary A. Bryant, OBA No. 1263
MOCK, SCHWABE, WALDO, ELDER,
REEVES & BRYANT,
A Professional Limited Liability Company
14th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-1110
Telecopy: (405) 235-0333
E-mail: gschwabe@mswerb.com
        gbryant@mswerb.com

*Local Counsel for the Debtor*

-and-

11

*/s/ Eric D. Madden*
Eric D. Madden, TX State Bar No. 24013079
Kyung S. Lee, TX State Bar No. 12128400
DIAMOND McCARTHY LLP
1201 Elm Street, 34th Floor
Renaissance Tower
Dallas, TX 75270
Telephone: (214) 389-5300
Telecopy: (214) 389-5399
E-mail: emadden@diamondmccarthy.com
          klee@diamondmccarthy.com

*Counsel for the Official Committee*
*of Unsecured Creditors*

-and-

*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar, OBA No. 11470
CONNER & WINTERS, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7101
Telephone: (405) 272-5711
Facsimile: (405)232-2695
E-mail: kphansalkar@cwlaw.com

*Local Counsel for the Official Committee*
*of Unsecured Creditors*

12

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 19th day of November 2010, I electronically transmitted the attached document to the Court Clerk using the ECF filing system. Based on the records currently on file, the Court Clerk will transmit a Notice of Electronic Filing to all parties registered to receive electronic notice as set forth below.

Regan Strickland Beatty
on behalf of Creditor American General Life Insurance Company
beattyr@crowedunlevy.com, kerryann.wagoner@crowedunlevy.com;

ecf@crowedunlevy.com
Elizabeth Berke-Dreyfuss
on behalf of Creditor The Pasha Group
edreyfuss@wendel.com, pjoakimson@wendel.com

Brandon C Bickle
on behalf of Creditor A&S Masonry, Inc. d/b/a D&R Masonry
bbickle@gablelaw.com, cgarzone@gablelaw.com

Julie Brower
on behalf of Creditor Milliman Inc.
jbrower@klinefirm.org, jbarnes@klinefirm.org; mrasp@klinefirm.org;
klinefirm@aol.com; mmills@klinefirm.org

Irena Damnjanoska
on behalf of Creditor Aviva USA Corp.
idamnjanoska@fellerssnider.com, irena.fs@gmail.com;
choward@fellerssnider.com

Layla J Dougherty
on behalf of Debtor Millennium Multiple Employer Welfare Benefit Plan
ldougherty@mswerb.com, swilliams@mswerb.com

Joseph A Friedman
on behalf of Creditor Aviva USA Corp.
ecf@krcl.com, jfriedman@krcl.com

Joel C. Hall
on behalf of Creditor The Pasha Group
joel@lawokc.com, brandy@lawokc.com

Robert J. Haupt on behalf of Creditor Republic Bank & Trust
rjhaupt@phillipsmurrah.com, iamatthews@phillipsmurrah.com;
jledwards@phillipsmurrah.com

John B. Heatly
on behalf of Creditor Penn Mutual Life Insurance
jheatly@fellerssnider.com, sshahan@fellerssnider.com;
mbellar@fellerssnider.com

G. Rudy Hiersche
on behalf of Creditor Scott Ridge
rudy@hlfokc.com, robin@hlfokc.com

William H. Hoch
on behalf of Creditor American General Life Insurance Company
hochw@crowedunlevy.com, kerryann.wagoner@crowedunlevy.com;
ecf@crowedunlevy.com

John E. Howland
on behalf of Creditor Guardian Life Insurance Company of America
johnh@rfrlaw.com

R. Keith Johnston
on behalf of Creditor Aviva USA Corp.
mvaughan@wbsvlaw.com; dskeens@wbsvlaw.com; jstenson@wbsvlaw.com;
mwoods@wbsvlaw.com

Timothy Kline
on behalf of Creditor Milliman Inc.
tkline@klinefirm.org, sblethrow@klinefirm.org; klinefirm@aol.com

Fred A. Leibrock
on behalf of Creditor Republic Bank & Trust
faleibrock@phillipsmurrah.com,
knogle@phillipsmurrah.com;ecf@phillipsmurrah.com

Erin K. Lovall
on behalf of Debtor Millennium Multiple Employer Welfare Benefit Plan
elovall@fslhlaw.com; pfranklin@fslhlaw.com; dskierski@fslhlaw.com;
mholmes@fslhlaw.com

John M Malesovas
on behalf of Creditor A&S Masonry, Inc. d/b/a D&R Masonry
john@malesovas.com, marisela@malesovas.com

Robert B. Millner
on behalf of Creditor American General Life Insurance Company
rmillner@sonnenschein.com

Stephen J. Moriarty
on behalf of Creditor Aviva USA Corp.
smoriarty@fellerssnider.com, choward@fellerssnider.com

Ivan J. Reich
on behalf of Creditor Covered Employers
ivan.reich@gray-robinson.com; andrea.brodsky@gray-robinson.com;
susan.stirling@gray-robinson.com

G. Blaine Schwabe
on behalf of Debtor Millennium Multiple Employer Welfare Benefit Plan
gschwabe@mswerb.com, swilliams@mswerb.com

Robert N. Sheets
on behalf of Creditor Republic Bank & Trust
rnsheets@phillipsmurrah.com, glmelson@phillipsmurrah.com

Jeffrey E. Tate
on behalf of Creditor The Pasha Group
jtate@lawokc.com

Mark B. Toffoli
on behalf of Creditor Charles J. Monier, Jr., M.D., LLC
mtoffoli@andrewsdavis.com

U.S. Trustee
Ustpregion20.oc.ecf@usdoj.gov

Anthony L. Vitullo
on behalf of Creditor A&S Masonry, Inc. d/b/a D&R Masonry
lvitullo@feesmith.com, wlyon@feesmith.com; mspurgeon@feesmith.com;
lrichards@feesmith.com

Richard D. White
on behalf of Creditor A California, LLC
rwhite@barberbartz.com; ahail@barberbartz.com


                                    */s/ Eric D. Madden*
                                    Eric D. Madden